UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARVIN J. PITSLEY, 89-C-1023,                                    04-CV-0768E(F)

                      Plaintiff,

       -vs-

GLENN S. GOORD, Commissioner, N.Y.S.                    MEMORANDUM
   Department of Corrections,
LUCIEN J. LECLAIRE, Deputy Commissioner,                         and
   N.Y.S. Department of Corrections,
DONALD SELSKY, Director, Special Housing,                       ORDER[1]
   N.Y.S. Department of Corrections,
VICTOR HERBERT, Former Superintendent,
   Attica C.F.,
RANDY JAMES, Deputy Superintendent for
   Security, Attica C.F.,
LT. T. DIXON, Hearing Officer, Attica C.F.,
GARY PRITCHARD, Correctional Officer,
   Attica C.F., and
R. TARGASZEWSKI, Correctional Officer,
   Attica C.F.,
Jointly, Severally, and Individually, Respectively,

                      Defendants.

_____

## INTRODUCTION

      Plaintiff Marvin J. Pitsley ("Pitsley"), currently an inmate at Auburn

Correctional Facility, filed this action *pro se* alleging that Defendants, who are all

employees of the New York State Department of Correctional Services ("DOCS"),

violated his civil rights while he was incarcerated at the Attica Correctional Facility

_____

[1]This decision may be cited in whole or in any part.

("Attica") by failing to address his complaints of corrections officer misconduct, improperly filing a disciplinary report against him in retaliation for his prior complaints of corrections officer misconduct and by failing to address his claims of retaliation.  Currently pending before the Court is Defendants' Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure ("FRCvP") 12(c).

## FACTS

The following facts are alleged in Pitsley's Complaint and the letters of complaint referred to therein and are — for purposes of this motion — presumed true. Pitsley was incarcerated at Attica from September 1999 until August 2002. Beginning in late January or early February, 2002, Pitsley observed defendant Gary Pritchard ("Pritchard"), a Corrections Officer at Attica, steal property from and set fire to inmates' cells.  On March 3, 2002 Pitsley submitted to Superintendent Walker[2] (whom the Court presumes to have been the Attica Superintendent) a letter concerning Pritchard's alleged conduct as described above. Pitsley sent a copy of the complaint to Attica's Grievance Committee ("the IGRC"), as well as to Defendant Randy James ("James"), Attica's Deputy Superintendent for Security.  Hearing no response, Pitsley sent a letter on March 15, 2002 to Defendant Victor Herbert ("Herbert"), then Superintendent of Attica, documenting Pritchard's activities and also alleging that Pritchard had threatened him such that "[d]uring the evening feed

---

[2] In his Complaint, Pitsley alleges that he sent the letter to Defendant Victor Herbert.  The copy of the letter attached to Pitsley's opposition to the Motion, however, is addressed to "Superientendent Walker."

up, [Pritchard] warned me not to come out of my cell. ∗∗∗ He told me that he would not like to see me get my head bashed in."[3] *See* Pitsley's Opp'n at Ex. 2. The March 15 letter was also copied to the IGRC and James.[4] On June 9, 2002 Pitsley sent another letter to Herbert, with a copy to the IGRC, alleging that Pritchard had had another corrections officer destroy some of Pitsley's property.[5] Pitsley received no response to his letter.

On June 13, 2002 Pitsley was visited by employees of the Inspector General's Office at which time he told them about Pritchard's allegedly illegal conduct, the threats Pritchard made against him and the failure of Herbert, James and Defendant Glenn Goord ("Goord"), the DOCS Commissioner, to take any remedial action. Pitsley did not see Pritchard in the Attica facility from June 15, 2002 until June 27, 2002, but on June 27, Pitsley observed Pritchard assault another inmate by spraying him in the face with hot water. After Pitsley informed Pritchard that he (Pitsley) was going to write another letter of complaint about Pritchard's conduct, Pritchard threatened Pitsley that he "was next." *See* Complaint at ¶15.

---

[3] Neither the Complaint nor the letter specifically allege the date on which the threat was made.

[4] While Pitsley alleges in his Complaint that the March 15 letter was copied to Defendant Glenn Goord ("Goord"), the DOCS Commissioner, the letter itself does not indicate that any copy was prepared for or sent to Goord.

[5] This letter was not attached to Pitsley's opposition to the Motion.

Pitsley, on behalf of the allegedly assaulted inmate, wrote a letter of complaint concerning Pritchard's June 27 conduct and Pritchard's threats to Pitsley and sent copies of the letter on June 28, 2002 to Herbert, Goord, the Federal Bureau of Investigation, the Wyoming County District Attorney, the Inspector General's Office, the United States Attorney's Office and the New York State Attorney General's Office. On June 28, 2002 Pritchard told Pitsley that Pritchard was "going to get him" and refused to deliver food to Pitsley. *Id*. at ¶16.  On June 29, 2002 Pritchard allegedly told Pitsley "I told you I was going to get you and I'm not done," then threw water on himself and falsely reported to his supervisor that Pitsley had thrown a liquid substance on him.  Compl. at ¶19.  Consequently, Pitsley was placed in handcuffs, taken to the Special Housing Unit ("the SHU"), placed in a cell with a plexi-glass shield, and was charged with assault on a staff member, committing an unhygienic act and making threats.[6]  The charges were approved by Defendant Targaszewski.[7] On July 9, 2002 Pitsley received a letter from defendant Lucien Leclaire ("Leclaire"), DOCS Deputy Commissioner, on Goord's behalf.  Leclaire indicated that Pitsley's June 28 letter was being referred to Herbert.

---

[6] Pitsley does not allege in his Complaint that he filed a grievance concerning this conduct, but, curiously, attached to his opposition to the Motion is a letter dated June 31, 2002 — despite there being only 30 days in the month of June — addressed to the IGRC complaining about this conduct.

[7] None of Pitsley's letters of complaint mention Targaszewski in any fashion.

On July 18, 2002 Pitsley again met with investigators from the Inspector General's Office at which time he alleged that he was the victim of retaliation.  On July 23, 2002 Pitsley sent a letter of complaint to Herbert, with a copy to Goord, alleging that Pritchard had filed false disciplinary charges against him in retaliation for his prior complaints about Pritchard.[8]  A disciplinary hearing was conducted by Defendant T. Dixon ("Dixon") and on July 30, 2002 Dixon found Pitsley not guilty of the unhygienic act charge and guilty of committing assault and making threats against a staff member and sentenced Pitsley to 160 days in the SHU.  Defendant Selsky affirmed Dixon's determination. In light of the fact that he was acquitted of the unhygienic act charge, Pitsley requested that the plexi-glass shield be removed from his SHU cell, but James denied that request.[9]  On August 11, 2002 Pitsley sent another letter to Goord alleging that Pritchard retaliated against him for cooperating with the Inspector General's Office.

On September 3, 2002 Leclaire responded to Pitsley's August 11 letter on Goord's behalf, indicated that Pitsley's complaints were currently under investigation by the Inspector General's Office and confirmed that Pitsley had met with the investigators on June 13 and July 18, 2002.  After Pitsley filed an appeal of his disciplinary charges, the determination was reversed and a new hearing ordered.  A

---

[8] Pitsley does not allege that he supplied a copy of this letter to the IGRC.

[9] Pitsley does not allege that he appealed or otherwise challenged James's determination.

new hearing was never held and the charges were expunged from Pitsley's record. The Complaint is silent as to whether the investigation by the Inspector General's Office was concluded and as to whether Pitsley appealed the conclusion — if any — that was reached.

Pitsley contends that Pritchard and Targaszewski violated his 1st, 8th and 14th Amendment rights by knowingly filing false disciplinary charges against him in June 2002 in retaliation for his previous complaints about Pritchard. He alleges that Selsky violated his 1st and 14th Amendment rights by failing to remedy and approving Dixon's erroneous determination finding Pitsley guilty of two disciplinary charges in July 2002. He contends that James violated his 8th Amendment rights by keeping him confined in the SHU in a cell covered by plexi-glass even after Pitsley was found by Dixon to be not guilty of committing an unhygienic act. Finally, he asserts that Goord, Leclaire, Herbert, James and Dixon violated his 1st and 14th Amendment rights by failing to remedy Pritchard's illegal actions, and thus allowing Pritchard and Targaszewski to retaliate against him.

## DISCUSSION

Judgment on the pleadings pursuant to FRCvP 12(c) is appropriate "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers* v. *M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). The Court may consider the pleadings and attached exhibits as well as statements or documents incorporated by reference. *See Brass* v.

*Am. Film Techs.*, *Inc.,* 987 F.2d 142, 150 (2d Cir. 1993).  As on a motion to dismiss pursuant to FRCvP 12(b), the facts alleged in the Complaint are deemed true and all reasonable inferences are construed in favor of the plaintiff.  *See Gant* v. *Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995).   Thus, defendants will be entitled to judgment on the pleadings only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley* v. *Gibson*, 355 U.S. 41, 46 (1957).  Additionally, because Pitsley is proceeding *pro se*, his Complaint must be read liberally and be construed to raise the strongest arguments it suggests.  *See Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000).

Defendants argue that Pitsley's case must be dismissed because he failed to exhaust his administrative remedies by filing a grievance alleging retaliation through the IGRC and following the various appeals processes available through the grievance system. Pitsley opposes the motion and argues (1) that Defendants waived their right to assert the affirmative defense of nonexhaustion of administrative remedies because in their Answers[10] asserting that defense, they failed to cite the statutory section providing that defense and (2) that he did exhaust his administrative remedies by writing letters to various DOCS officials and by copying

---

[10] A separate Answer was filed on behalf of each Defendant.

the IGRC on those letters in compliance with the expedited grievance process contained in DOCS Directive # 4040.[11]

In a series of cases, the Second Circuit has clarified the law on exhaustion of administrative remedies in the prisoner litigation context.  *See Hemphill* v. *New York*, 380 F.3d 680 (2d Cir. 2004); *Oritz* v. *McBride*, 380 F.3d 649 (2d Cir. 2004); *Giano* v. *Goord*, 380 F.3d 670 (2d Cir. 2004); *Johnson* v. *Testman*, 380 F.3d 691 (2d Cir. 2004); *Abney* v. *McGinnis*, 380 F.3d 663 (2d Cir. 2004).  The Second Circuit has instructed that courts should first ask "whether administrative remedies were in fact 'available' to the prisoner" within the specific facts of the case.  *Hemphill*, at 686.  Next, the court should determine whether any of the "defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise it or preserve it, ***, or whether [a defendant's] own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."  *Ibid*. (internal citations omitted).

Finally, "[i]f the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether "special circumstances" have been plausibly alleged that justify the prisoner's failure to comply with administrative

---

[11] The text of Directive #4040 has not been provided on this Motion.

procedural requirements."  *Ibid*. (internal citations and quotation marks omitted).

Such special circumstances have been found, for example, in a case in which the

plaintiff failed to exhaust his administrative remedies based on an erroneous — but

reasonable — interpretation of DOCS guidelines.  *See Giano* v. *Goord*, 380 F.3d 670

(2d Cir. 2004).

A.  Available Remedies

Pitsley had several means of administratively raising his complaints about

Pritchard.  DOCS provides inmates with a procedure by which to grieve adverse

events occurring during their confinement.  This is known as the Inmate Grievance

Program.  The regular grievance process consists of three steps.  Within 14 days of

the event forming the basis of the grievance, the inmate must file a grievance with

the IGRC.  7 NYCRR §701.7(a)(1).  Such can be made either on a grievance form or on

plain paper if a form is not readily available.  *Ibid*.  The IGRC must convene a hearing,

if necessary, within 7 working days of receipt of the grievance and issue a written

determination within 2 days of the close of the hearing.  7 NYCRR §701.7(a)(4).  If the

grievance is not resolved satisfactorily to the inmate, the inmate may appeal the

IGRC's determination to the facility's Superintendent.   *Id*. at §701.7(b).   The

Superintendent then has 10 working days to make a determination, and, if the

determination is unsatisfactory to the inmate or if the Superintendent fails to make

a determination within that time period, the inmate may appeal to the Central Office

Review Committee ("CORC").  *Id*. at §701.7(b) and(c).

In addition to the regular grievance process, however, DOCS has also provided an expedited process for grievances or complaints that allege harassment or misconduct by a DOCS employee.  This expedited process has been described in DOCS Directive #4040 and is now codified at 7 NYCRR §701.11.[12]  At the time of the underlying events, the regulation stated that an inmate who believed he was being harassed should have first reported the alleged conduct to the immediate supervisor of the employee in question and that such report did not preclude the filing of a formal grievance.  The allegations of misconduct were then to be given a grievance calendar number and recorded in sequence with all other grievances.  The information concerning the allegations was to be given to the Superintendent by the close of business that same day.  Then, the Superintendent was to determine whether the allegations presented a *bona fide* case of harassment and, if not, the grievance was to be returned to the IGRC for processing in the ordinary manner.  If, however, the allegations presented a *bona fide* case of harassment, the regulations required the Superintendent to initiate an investigation and render a decision within 12 days.  If the Superintendent failed to respond within 12 days, the inmate had the ability to appeal to the CORC.  *See* Directive # 4040, *cited in Hemphill* v. *New York*, 380 U.S. 680, 682-82 (2d Cir. 2004).

---

[12] That section was amended in April 2004, which is after the events which form the basis for the Complaint took place but before the Complaint was filed.  As is discussed in greater detail *infra*, Defendants address only the requirements of the regulation as it currently exists and do not address whether Pitsley should be held to those requirements or to the requirements of Directive #4040 as it existed at the time of the relevant events.

As the regulation currently exists, the inmate is required to file a grievance with the IGRC as with all other grievable issues.  7 NYCRR §701.11(b)(1).  The processing of the grievance is treated in the same manner as that described above, with all material being transmitted to the Superintendent.  The role and duties of the Superintendent also remain the same.  *Id*. at §701.11(b)(2) - (b)(5).  Finally, the regulation presently provides that an inmate *may* appeal the Superintendent's determination — or failure to make a determination — to the CORC.  *Id*. at §701.11(b)(6) - (b)(7).

B.  Waiver of Affirmative Defense

Pitsley argues that Defendants waived their affirmative defense of failure to exhaust administrative remedies because they failed to cite to 42 U.S.C. §1997e(a)[13], but rather cited the relevant statutory section as 42 U.S.C. §1197e(e)[14]. In their reply memorandum, Defendants concede that each Answer contains a typographical error and seek to amend the Answers to reflect the proper citation as §1997e(a).

---

[13] That subsection states:

"(a) Applicability of administrative remedies

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."
42 U.S.C. §1997e(a).

[14] Section 1197e does not exist within Title 42 of the United States Code.

FRCvP 8(c) requires that affirmative defenses be set forth in the responsive pleading.  "Failure to plead an affirmative defense in the answer results in the waiver of that defense and its exclusion from the case."  *U.S. for and on behalf of Maritime Admin.* v. *Continental Illinois Nat. Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1253 (2d Cir. 1989).  Numerous cases have treated a dispositive motion arguing for the first time the application of an affirmative defense as also asserting a motion to amend the answer to assert the affirmative defense. *See e.g., Bonilla* v. *Janovick*, 2005 WL 61505, at *2 (E.D.N.Y. 2005) (construing defendant's motion for summary judgment based on plaintiff's failure to exhaust administrative remedies as motion to amend the answer to assert the nonexhaustion affirmative defense).  Those courts then considered whether the requirements for amendment under FRCvP 15 had been satisfied.

In their reply memorandum, Defendants have affirmatively sought to amend their Answers to correct the statutory citation.  Leave to amend is generally granted in the absence of (1) undue delay; (2) dilatory purposes or bad faith; (3) undue prejudice to the opposing party; and (4) futility of the amendment.  *Foman* v. *Davis*, 371 U.S. 178, 182 (1962).  None of the circumstances that weigh against leave to amend are present in this case.  Defendants have not unduly delayed their request to amend.  There is no indication that bad faith motivates their request and Pitsley will not be prejudiced by the amendment.

Pitsley's Complaint was filed on September 22, 2004.  Defendants filed their Answers on March 18, 2005.  At a scheduling conference on May 13, 2005, the Magistrate Judge entered a scheduling order pursuant to FRCvP 16(b) which indicated that Defendants' motion to dismiss for failure to exhaust administrative remedies should be filed on or before July 8, 2005.  The instant Motion was filed in accordance with that Order on July 8, 2005.  Thus, even if Pitsley was not adequately informed by the Answers of the assertion of the nonexhaustion defense, he was adequately informed during the May 13, 2005 conference, in which he participated by telephone, and by the scheduling order entered on that same date.  Finally, Defendants sought to amend their Answers shortly after Pitsley brought to light the incorrect citation and did not delay.

Accordingly, Defendants are granted leave to amend their Answers to cite the correct statutory section and the Court concludes that they have not waived their affirmative defense.

C.  Merits of Nonexhaustion Affirmative Defense

Defendants argue that Pitsley failed to exhaust available administrative remedies because he neither filed a grievance with the IGRC nor appealed any complaint he did file through all of the requisite steps.  Pitsley argues that, because he alleged harassment by Pritchard, he properly utilized the expedited grievance process and wrote directly to the Attica Superintendent and "followed the proper procedure as outlined in the [DOCS] Directive #4040 ***."  Pitsley's Opp'n ¶10.  He

- 13 -

also alleges that, as he sent copies of his complaints to the IGRC, to the

Superintendent and to "Albany" in the first instance, he has satisfied the exhaustion

requirement.  Specifically, Pitsley argues:

> "15.   The procedures outlined in DOCS[] Directive [#]4040 state that a complaint must be filed with the [IGRC] and if not resolved, it may be appealed to the Superintendent and then to Albany.
> 16.   The plaintiff did file a copy of the complaint [with] the [IGRC] as well as notifying the Superintendent and Albany yet nothing was ever done on those complaints even though they were sent to the same areas which would be addressed through the grievance procedure.
>
>           *     *     *     *     *
>
> "20.   Plaintiff submitted his complaints to each of the three levels of review.  A copy went to the [IGRC] (level 1), with a copy to the Superintendent (level 2) and a copy to the Commissioner (level 3). It is clear from the paperwork submitted in the instant case and admitted by the defendants that the plaintiff did exactly that."

Pitsley's Opp'n at 4, ¶¶15, 16, 20.

To the extent Pitsley argues that he complied with the regular three-step

grievance procedure by sending copies of the *same complaint* to the IGRC, the Attica

Superintendent and to the Commissioner of DOCS, his argument fails and, as a

matter of law, he has failed to exhaust his administrative remedies.  The regular

grievance process allows for *appeals* of determinations made in the lower steps.

Thus, Pitsley could have appealed any determination — or lack thereof — by the

IGRC to the Superintendent.  He could then have appealed the Superintendent's

determination — or lack thereof — to the CORC.  By submitting his letters of

complaint *simultaneously* to the three levels of review, Pitsley failed to follow the

proper procedure.  Moreover, Pitsley never sent copies of his complaints to the CORC;

he only sent copies to the Commissioner.  Undisputedly, under the regular grievance

process, the final level of appeal is to the CORC, not to the Commissioner of DOCS.

Thus, even if simultaneous submission of a complaint to the three levels of review

sufficed to exhaust Pitsley's administrative remedies — which it does not — Pitsley

never submitted his complaints to the CORC for review.  Thus, Pitsley has failed to

exhaust his administrative remedies under the regular grievance process.  The

inquiry is not ended, however, because Pitsley also alleges that, by sending his

letters of complaint directly to the Attica Superintendent, he complied with the

expedited grievance process available in cases of alleged employee misconduct or

harassment.

As discussed *supra* the requirements of the expedited grievance process as

described in Directive #4040 were — at the time of the relevant events in this case

— unclear.  Until April 2004, the regulations were silent as to whether a grievance

alleging such misconduct was required to be filed with the IGRC.  The regulations

stated only that the misconduct should be first reported to the employee's immediate

supervisor.  The regulations then stated that an inmate's allegations of harassment,

and any relevant documentation, must be submitted to the facility Superintendent,

who would then determine whether the allegations presented a *bona fide* issue of

harassment.  Pitsley has alleged that he presented his complaints of harassment to

the Attica Superintendent.  As Defendants did not address the requirements of the

- 15 -

regulations as they existed at the time of these events, Defendants have not addressed the issue as to whether Pitsley's letters to the Superintendent would be sufficient to satisfy that requirement.  Moreover, Defendants have not addressed whether these same letters, which Pitsley allegedly sent to the IGRC, suffice to constitute a grievance under the regulations as they now exist.

Notwithstanding, Pitsley alleges — and it appears evident from the record —, that an investigation was commenced by the Inspector General's Office.  It is unclear as to whether this was initiated at the behest of the Superintendent or the Commissioner and it is unclear as to whether the investigation ever yielded a conclusion.  Regardless, it appears that the remedy envisioned by the expedited grievance process — an investigation — was achieved by Pitsley.  Accordingly, the Court turns to the final step of the expedited grievance process, the appeal.

Both Directive #4040 and §701.11 provide that an inmate *may* appeal to the CORC.  The argument could be made — and the Court must interpret Pitsley's *pro se* pleadings as raising the strongest arguments they suggest — that both the prior and the current versions of the regulations *permit but do not require* an inmate to appeal a Superintendent's determination after investigation — or lack thereof — to the CORC.  Therefore, the Court cannot conclude on the record before it that, as a matter of law, Pitsley failed to exhaust his administrative remedies through the expedited grievance process.

Accordingly, it is **ORDERED** that Defendants' are granted leave to amend their Answers to correct the statutory citation and their Motion for Judgment on the Pleadings is denied and the case is referred back to the Honorable Leslie G. Foschio for further proceedings including the setting of a new scheduling order and the supervision of discovery.

DATED:        Buffalo, N.Y.

              May 8, 2006

                              _____/s/ John T. Elfvin_____
                                   JOHN T. ELFVIN
                                      S.U.S.D.J.